# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KALPANA AHUJA,

    Plaintiff,

    v.

DETICA INC.,

    Defendant.

Civil Action No. 09–2246 (CKK)

## MEMORANDUM OPINION
(September 30, 2010)

Plaintiff, Kalpana Ahuja, brings this action against her former employer, Detica, Incorporated ("Defendant"). Plaintiff alleges that Defendant discriminated against her on the basis of her gender, race, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, on the basis of her race in violation of 42 U.S.C. § 1981 ("§ 1981"), and the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Presently before the Court are Defendant's [4] Partial Motion to Dismiss Complaint and Motion to Strike Certain Allegations ("Def.'s Mot."); Plaintiff's [9] Opposition to Defendant's Partial Motion to Dismiss and Motion to Strike Certain Allegations ("Pl.'s Opp'n"), in which Plaintiff also requested leave to amend the Complaint; and Defendant's [10] Reply in Support of its Partial Motion to Dismiss Complaint and Motion to Strike Certain Allegations ("Def.'s Reply"). The Court has thoroughly reviewed the parties' submissions, applicable case law, the relevant statutory and regulatory authority, as well as the record of the case as a whole. For the reasons set forth below, the Court shall GRANT-IN-PART, DENY-IN-PART, and HOLD-IN-ABEYANCE-IN-PART Defendant's [4] Partial Motion

to Dismiss and DENY Plaintiff's construed motion for leave to amend the Complaint. Specifically, the Court shall: (1) convert Defendant's motions to dismiss Plaintiff's ADEA, Title VII retaliation, and Title VII hostile work environment claims to motions for summary judgment because the parties' filings relied on documents outside the pleadings when discussing these motions; (2) grant Defendant's converted motion to dismiss Plaintiff's Title VII hostile work environment claim (Count I) for failure to state a claim; (3) grant Defendant's converted motion to dismiss Plaintiff's ADEA claims (Counts III & IV) for failure to exhaust administrative remedies; (4) hold in abeyance Defendant's converted motion to dismiss Plaintiff's Title VII retaliation claim (Count IV) for failure to exhaust administrative remedies; (5) deny Defendant's motion to dismiss Plaintiff's purported pattern and practice claims for failure to state a claim; (6) deny Defendant's motion to strike the Complaint's allegations of Defendant's pattern and practices; (7) deny Defendant's motion to dismiss Plaintiff's purported Title VII claims for discrimination in hiring, compensation and benefits, performance evaluations, and demotions; (8) grant Defendant's motion to dismiss as time barred Plaintiff's remaining Title VII claims based on events occurring prior to March 8, 2007; (9) grant Defendant's motion to dismiss as time barred Plaintiff's § 1981 claims based on discrete acts of discrimination occurring prior to November 25, 2004; and (10) deny Plaintiff's construed motion for leave to amend the Complaint.

## I. BACKGROUND

Plaintiff, a female of Asian-Indian ancestry, began working for Defendant's Information Technology ("IT") Division on January 2, 2002. Complaint ¶¶ 14, 17, Docket No. [1]. Plaintiff signed an employment agreement with Defendant on June 21, 2004, which was renewed annually

until Plaintiff's termination on December 31, 2007.  *Id.* ¶ 18; *see also* Pl.'s Opp'n Ex. 2

(Plaintiff's Arlington Human Rights Comm'n Emp't Discrimination Intake Questionnaire)

(hereinafter "Intake Questionnaire"), at 2.  Initially, Plaintiff helped develop Defendant's IT

Division and, eventually, Plaintiff became one of Defendant's five IT project managers.  Compl.

¶¶ 17-20.  While working for Defendant, Plaintiff was supervised by Phil Vincenzes, a Caucasian

male, and Matthew Travis, Defendant's president and a Caucasian male.  Compl. ¶ 21.  Plaintiff

alleges that despite six years of exceptional work, she was never awarded a promotion and, in

fact, that Mr. Vincenzes suppressed her promotion through the company.  *Id.*  ¶¶ 38, 45.

In September 2004, Plaintiff informed Mr. Vincenzes that Stuart Zimmerman, one of

Plaintiff's subordinates who is a Caucasian male, was not performing his duties properly.  *Id.* ¶

46; *see also* Intake Questionnaire at 7.  Mr. Zimmerman then filed allegations of harassment

against Plaintiff.  Compl. ¶ 46.  Although Defendant's human resources department concluded

that Plaintiff did not harass Mr. Zimmerman and the whole incident was a due to a

misunderstanding, Plaintiff alleges that thereafter Mr. Vincenzes favored Mr. Zimmerman,

ostracized Plaintiff, and forced Plaintiff to write Mr. Zimmerman an apology.  *Id.* ¶¶ 47-48.

Around December 2006, Plaintiff complained to John Capitelli, a member of Defendant's

human resources department, that she was being discriminated against by her coworkers based on

her race, national origin, and gender.  *See id.* ¶  52, 58.  As a result of this complaint, Plaintiff

alleges that Mr. Vincenzes and Mr. Travis retaliated against her in various forms, including not

inviting her to meetings, ostracizing her, and removing her from projects.  *Id.*  Approximately

two months later, on February 26, 2007, Plaintiff filed a complaint with HR due to the alleged

harassment of Kathleen McDonald, a Caucasian female coworker.  *Id.* ¶  53.  Plaintiff alleges

that after this complaint, Defendant's management removed her from projects and disciplined her. *Id.* ¶ 57. On March 16, 2007, Plaintiff complained again to HR that she was being discriminated against based on her race, gender, and national origin. *Id.* ¶ 58. These complaints, Plaintiff alleges, were never investigated by HR and no formal documentation of her complaints was created. *Id.* ¶ 59.

Plaintiff became pregnant in July 2007. *Id.* ¶ 25. On approximately November 12, 2007, Plaintiff informed Mr. Vincenzes and Mr. Travis that she was four months into a high risk pregnancy and requested maternity leave commencing in the end of March 2008, to the beginning of June 2008. *Id.* Plaintiff alleges that at the time of this request she had amassed 233 hours of leave and 60 additional hours of sick leave. *Id.* ¶ 26. Plaintiff further alleges that Defendant offers four weeks of maternity leave to its employees and that prior to Plaintiff's termination Defendant had granted maternity leave to four Caucasian, non-Asian, employees, including one employee who requested maternity leave at approximately the same time as Plaintiff. *Id.* ¶¶ 26-27.

On November 30, 2007, Mr. Travis and Mr. Vincenzes informed Plaintiff that due to a decrease in projects and funding, Plaintiff would be terminated on December 31, 2007. *Id.* ¶¶ 21, 62. Plaintiff was the only IT project manager terminated at that time and none of the other IT project managers were of Asian-Indian ancestry. *Id.* ¶¶ 28-29. Plaintiff alleges that when terminated she was the longest tenured IT project manager, had more seniority than three of other the IT project managers, and was equal in seniority to the fourth IT project manager. *Id.* ¶¶ 23, 28. Plaintiff also claims that she was replaced by two Caucasian American males who were both younger than forty years old. *Id.* ¶ 33. A month after her termination, on January 30, 2008,

Defendant contacted Plaintiff and offered to rehire her at one hundred dollars per hour, without benefits. *Id.* ¶¶ 36, 37.

Shortly after her termination, January 2, 2008, Plaintiff filed an Intake Questionnaire with Dennis Sumlin, a Human Rights Investigator/Intake Officer with the Arlington Human Rights Commission, in which she alleged that Defendant had discriminated against her. *See* Intake Questionnaire; Pl.'s Opp'n Ex. 2, at 1. The Intake Questionnaire informs complainants, such as Plaintiff, that "The information requested on this form will help us to understand your allegations. Please complete the information to the best of your ability. An Intake officer will review the information and talk to you about filing a complaint after you have completed this form." Intake Questionnaire at 1; *see also id.* at 12 (informing complainants that they have "the responsibility to cooperate with this office in order to continue the process of filing a complaint" and that their "failure to do so will result in the termination of this process") (changed from all capital letters). In the Intake Questionnaire, Plaintiff checked boxes indicating that she believed Defendant retaliated against her and discriminated against her on the basis of her race, sex, and national origin. *Id.* at 4. The Intake Questionnaire totals twelve pages, eight of which include Plaintiff's factual allegations regarding her claims of discrimination. *See id.* at 4-11.

On May 12, 2008, Plaintiff filed her "Complaint of Discrimination" (hereinafter "EEOC Complaint") with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, that Defendant discriminated against her "because of [her] sex, female, relating to pregnancy; race (Asian); and national origin (India) . . . ." Def.'s Mot. Ex. 1, at 1. On May 21, 2008, the EEOC served Mr. Travis a "Notice of Charge of Discrimination" (hereinafter "Notice of Charge") indicating that Plaintiff had filed a charge of discrimination against Defendant that

alleged discrimination based on race, sex, and national origin in violation of Title VII. The

EEOC issued Plaintiff a right to sue letter on September 2, 2009. Compl. Ex. A. On November

25, 2009, Plaintiff filed the Complaint in this case asserting claims of discrimination based on

race, gender, pregnancy, national origin, creation of hostile work environment, and disparate

treatment under Title VII, Compl. ¶ 78-79 (Count I); discrimination based on race, creation of a

hostile work environment and disparate treatment in violation of § 1981, *id.* ¶ 80-81 (Count II);

and age discrimination under the ADEA, *id.* ¶ 82-83 (Count III); and retaliation claims under

Title VII, as well as under the ADEA, *id.* ¶ 84-85 (Count IV).

Defendant filed its pending motions to dismiss on January 7, 2010, and attached

Plaintiff's EEOC Complaint and Notice of Charge as exhibits. *See* Def.'s Mot. Ex. 1. Defendant

has moved to: (1) dismiss Plaintiff's ADEA claims for failure to exhaust administrative

remedies, failure to state a claim, or because they are time barred; (2) dismiss some of Plaintiff's

Title VII claims for failure to exhaust administrative remedies, failure to state a claim, or as time

barred; (3) dismiss some of Plaintiff's § 1981 claims as time barred; (4) dismiss Plaintiff's claims

based on Defendant's pattern and practices for failure to state a claim; and (5) strike the

Complaint's allegations on which Plaintiff relies in support of her pattern and practice claims.

Plaintiff filed her Opposition to Defendant's motion to dismiss on February 5, 2010, and also

requested leave to amend the Complaint if the Court dismisses her retaliation or age claims. Pl.'s

Opp'n at 10. Plaintiff also attached four exhibits to her Opposition, including Plaintiff's Intake

Questionnaire, *see id.* Exs. 1-4. Defendant then filed its Reply on February 12, 2010.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombley*, 550 U.S. at 557).  Rather, a complaint must contain sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Twombley*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1949 (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged") (internal quotation omitted).  However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 129 S.Ct. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

When evaluating a Rule 12(b)(6) motion, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). If, however, "matters outside the pleadings are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d).

"The decision to convert a motion to dismiss into a motion for summary judgement . . . is committed to the sound discretion of the trial court." *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 159 (3d ed. 2004)). In exercising this discretion, a "reviewing court should not automatically treat a dismissal where external materials were not excluded as a summary judgment, although such treatment may be the most common result . . . . Rather, the reviewing court must assure itself that summary judgment treatment would be fair to both parties in that the procedural requirements of the applicable rules were observed." *Tele-Commc'ns of Key West, Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985). Nevertheless, "no useful purpose can be served by [Rule 12(d)'s notice-and opportunity requirement's] application where it is clear that the dispositive facts will remain undisputed and unchanged." *See Hollis v. U.S. Dep't of Army*, 856 F.2d 1541, 1544 (D.C. Cir. 1988); *see also Highland Renovation Corp. v. Hanover Ins. Grp.*, 620 F. Supp. 2d 79, 82 (D.D.C. 2009) (holding that whether plaintiff's claim

was time barred was a "discrete legal issue" that the court may decide in a converted motion to dismiss "without providing notice or the opportunity for discovery to the parties") (internal citations omitted).

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 247).

Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. 56©). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. 56(e)). All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 247.

# III. DISCUSSION

As a threshold matter, the Court notes that the parties have attached five exhibits to their motion to dismiss filings. The Court, however, may only consider Plaintiff's EEOC Complaint and Notice of Charge, Def.'s Mot. Ex. 1, without converting the motions to dismiss, *see Wiley v. NEBF Invs.*, No. 09-CV-223(ESH), 2010 WL 114953, at *1 n.1 (D.D.C. Jan. 12, 2010) (considering an EEOC charge in a motion to dismiss without converting the motion because the charge was a public document of which a court may take judicial notice). In their filings, the parties have relied on the remaining exhibits when discussing the pending motions to dismiss Plaintiff's ADEA, Title VII retaliation, and Title VII hostile work environment claims. *See* Pl.'s Opp'n at 3-9; Def.'s Reply at 7-8, 9-10. Accordingly, in an abundance of caution and consistent with this Court's prior practice, the Court shall convert the abovementioned motions to dismiss to motions for summary judgment. *See Langley v. Napolitano*, 677 F. Supp. 2d 261, 263 (D.D.C. 2010) ("[I]t is 'probably the better practice for a district court always to convert to summary judgment so as to avoid . . . question[s]' as to whether the attached exhibits were properly consider[ed] in ruling upon a motion to dismiss under Rule 12(b)(6)") (second alteration in the original) (quoting *Marshall Co. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993)). Nevertheless, as these converted motions involve "discrete legal issue[s]," the Court shall also rule on the converted motions "without providing notice or the opportunity for discovery to the parties." *Highland Renovation*, 620 F. Supp. 2d at 82; *see also Hollis*, 856 F.2d at 1544 ("[N]o useful purpose can be served by [Rule 12(d)'s notice-and opportunity requirement's] application where it is clear that the dispositive facts will remain undisputed and unchanged.").

*A.     The Converted Motion to Dismiss Plaintiff's Hostile Work Environment Claim for Failure to State a Claim*

Defendant has moved to dismiss Plaintiff's Title VII hostile work environment claim for failure to state a claim. *See* Def.'s Mot. at 13-17. While Plaintiff is not required to plead a *prima facie* case of hostile work environment in the Complaint, the alleged facts must be able to support such a claim. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). To allege a *prima facie* case of hostile work environment, Plaintiff "must demonstrate that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred because of her [sex,] race or disability; (4) the harassment affects a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it." *Childs-Pierce v. Utility Workers Union of Am.*, 383 F. Supp. 2d 60, 77 (D.D.C. 2005), *aff'd*, 187 F. App'x 1 (D.C. Cir. 2006).

Not all forms of offensive or discriminatory conduct, however, give rise to a hostile work environment claim. A workplace becomes "hostile" only "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). In determining whether a hostile work environment exists, the Supreme Court has directed courts to examine the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* at

788 (citations omitted). "Even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citing *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996)); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing a hostile work environment claim in part because "the alleged events are temporally diffuse, spread out over a four-year period suggesting a lack of pervasiveness"); *Childs-Pierce*, 383 F. Supp. 2d at 79 (dismissing a hostile work environment claim that plaintiff "attempt[ed] to cobble together . . . from discrete acts of alleged discrimination against her that are neither severe nor widespread").

In her Opposition, Plaintiff argues that her Complaint sufficiently stated a hostile work environment. Pl's Opp'n at 8. Plaintiff's entire justification for this assertion is that "she was ostracized, removed from projects, reassigned and lies told about her." *Id.* (citing Compl. ¶¶ 52, 70, 76; Intake Questionnaire at 6-7). The Court concludes, however, that these allegations are insufficient to state a claim for hostile work environment.[1]

First, paragraphs seventy and seventy-six of the Complaint cannot support Plaintiff's hostile work environment claim because they characterize Defendant's behavior and do not allege specific facts sufficient to support a hostile work environment claim. *See Celotex Corp.*, 477 U.S. at 324 (requiring the non-moving party in a motion for summary judgment to "designate specific facts showing that there is a genuine issue for trial'") (quoting Fed. R. Civ. P. 56(e); *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombley*, 550 U.S. at 557); *see also* Compl. ¶¶ 70, 76. The remaining paragraph that Plaintiff cites in support of her hostile

---

[1] Accordingly, the Court does not address Defendant's arguments that Plaintiff failed to exhaust her administrative remedies and that Plaintiff may not rely upon the Intake Questionnaire to support her hostile work environment claim. *See* Def's Mot. at 8-10; Def.'s Reply at 2-7.

work environment claim alleges that Plaintiff experienced retaliation from Mr. Vincenzes and Mr. Travis after complaining to Defendant's human resources department in December 2006. *Id.* ¶ 52. An allegation of retaliation, however, is insufficient to allege a distinct hostile work environment claim. *See Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005) ("The remainder of plaintiff's alleged 'hostile' events are the very employment actions he claims are retaliatory; he cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim.").

Second, even when the Court examines the entire Complaint, it is clear that Plaintiff has not alleged that her workplace was "permeated with discriminatory intimidation, ridicule and insult that is sufficiently . . . pervasive . . . ." *Harris*, 510 U.S. at 22 (1993). At most, Plaintiff has alleged five discrete events of discrimination spread out over more than four years. *See* Compl. ¶¶ 25-29, 33, 46-48, 52-53, 57-59. The fact that these alleged events span more than four years indicates that the alleged discrimination was not pervasive. *Compare Nurriddin v*, 674 F. Supp. 2d at 94 ("[T]he alleged events are temporally diffuse, spread out over a four-year period suggesting a lack of pervasiveness"), *with Hutchinson v. Holder*, 668 F. Supp. 2d 201, 219 (D.D.C. 2009) (refusing to dismiss plaintiff's hostile work environment claim when the complaint contained "*dozens* of incidents that [plaintiff] alleges constituted a hostile work environment") (emphasis added).

Furthermore, two of these discrete events are not properly considered as a basis for a hostile work environment claim. Specifically, Plaintiff has failed to allege that the September 2004 incident with Mr. Zimmerman and the February 2007 incident with Ms. McDonald "occurred because of her race or disability." *Childs-Pierce*, 383 F. Supp. 2d at 77; *see*

13

*also* Intake Questionnaire at 6 (alleging that Ms. McDonald harassed Plaintiff regarding Plaintiff's work performance). Absent a connection between these alleged discriminatory acts and Plaintiff's sex, race, or ethnicity, these allegations cannot be grounds for a Title VII hostile work environment claim. *Childs-Pierce*, 383 F. Supp. 2d at 77-78 ("Everyone can be characterized by sex, race, [or] ethnicity . . . . It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise the federal courts will become a court of personnel appeals") (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002).

In conclusion, for the reasons set forth above, no reasonable trier of fact could find in favor of Plaintiff in regards to her Title VII hostile work environment claim. Therefore, the Court shall grant Defendant's converted motion to dismiss Plaintiff's Title VII hostile work environment claim.

B. *The Converted Motions to Dismiss for Failure to Exhaust Administrative Remedies*

In addition, Defendant moves to dismiss Plaintiff's ADEA discrimination claim (Count III), ADEA retaliation claim (Count IV), and Title VII retaliation claims (Count IV) for failure to exhaust administrative remedies.

"Before suing under either the ADEA or Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident." *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998). A lawsuit following a charge is limited "to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard University* 71 F.3d 904, 907 (D.C. Cir. 1995). In particular, these claims "must arise

14

from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)); *see also Hodge v. United Airlines*, 666 F. Supp. 2d 14, 22 (D.D.C. 2009) (dismissing a hostile work environment claim because the information in the charge was "not specific or elaborate enough to allow the EEOC to infer the existence of a hostile work environment claim."). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the responsibility of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir.1997) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir.1985)); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990).

To assert a claim of retaliation, Plaintiff must "show[] (1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). "An activity is 'protected' for the purposes of a retaliation claim 'if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment.'" *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91 (D.D.C. 2006) (quoting *Coleman v. Potomac Elec. Power Co.*, 422 F. Supp. 2d 209, 212-13 (D.D.C. 2006)). An action is "adverse" if the employer's actions are likely to have "'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 126 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

In this case, Plaintiff admits that her EEOC Complaint and Notice of Charge do not reference her ADEA discrimination, ADEA retaliation, or Title VII retaliation claims. *See* Pl.'s

Opp'n at 4, 8.  Nevertheless, Plaintiff argues that she exhausted her administrative remedies in regards to these claims by including allegations supporting these claims in her Intake Questionnaire.  *See id.* at 3-6, 8.  In response, Defendant contends that Plaintiff cannot rely on the Intake Questionnaire to exhaust administrative remedies.  *See* Def.'s Reply at 2-4.  For the reasons set forth below, the Court shall grant Defendant's motion to dismiss Plaintiff's ADEA discrimination and ADEA retaliation claims for failure to exhaust administrative remedies[2] and shall hold in abeyance Defendant's motion to dismiss Plaintiff's Title VII retaliation claim for failure to exhaust administrative remedies.

### 1.     Plaintiff's ADEA Discrimination and Retaliation Claims

As mentioned above, Plaintiff concedes that her EEOC Complaint and Notice of Charge do not mention age discrimination.  *See* Pl.'s Opp'n at 8.  The Court agrees.  Significantly, neither document contains a single allegation that Plaintiff was discriminated against because of her age, much less a reference to Plaintiff's age.  *See* Def.'s Mot. Ex. 1.  In fact, in her EEOC Complaint Plaintiff only alleges that she was "discriminated against because of [her] sex, female, relating to pregnancy; race (Asian); and national origin (India) . . . ."  *Id.* at 1.  Similarly, in the Notice of Charge prepared by the EEOC and sent to Defendant based on Plaintiff's EEOC Complaint, the EEOC only filled in the boxes on the standardized form corresponding to claims under Title VII for race, sex, and national origin discrimination, while the boxes corresponding to age discrimination and claims under the ADEA were empty.  *See id.* at 3.

---

[2] Accordingly, the Court does not reach Defendant's other motions to dismiss Plaintiff's ADEA discrimination and retaliation claims.

Despite the EEOC Complaint filed with the EEOC and the Notice of Charge served on Defendant omitting any reference to age discrimination or the ADEA, Plaintiff argues that the Intake Questionnaire she submitted to the Arlington Human Rights Commission is sufficient to exhaust the administrative remedies for her ADEA discrimination and ADEA retaliation claims. *See* Pl.'s Opp'n at 8. In response, Defendant argues that Plaintiff may not rely on the Intake Questionnaire to exhaust administrative remedies because the Intake Questionnaire is not a charge of discrimination. *See* Def.'s Reply at 2-6. The Court, however, does not need to reach the issue of whether Plaintiff may rely on the Intake Questionnaire because assuming *arguendo* that Plaintiff could rely on the Intake Questionnaire, the Court finds that Plaintiff nonetheless failed to exhaust administrative remedies for her ADEA claims.

Similar to Plaintiff's EEOC Complaint, the Intake Questionnaire does not indicate that Plaintiff alleged she was discriminated against based on her age. Significantly, the Intake Questionnaire asks complainants "on what basis do you believe that you were discriminated" and asks them to "check all that apply." Intake Questionnaire at 4. Similar to the allegations in her EEOC Complaint, Plaintiff checked the Intake Questionnaire's boxes for race, sex, pregnancy, and national origin. *See id.* However, Plaintiff did not check the box indicating that she believed she was discriminated against based on age. *See id.* The fact that Plaintiff checked the boxes for the other forms of discrimination indicates that she understood the significance of checking the age discrimination box and that her failure to do so was because she did not believe she was discriminated against because of her age. Furthermore, Plaintiff omitted a single explicit allegation of being discriminated against based on her age in the over eight pages, single space description she includes in the Intake Questionnaire regarding why she believed was

discriminated against. *See id.* at 4-11. This omission, along with Plaintiff's failure to check the Intake Questionnaire's box for age discrimination, is glaring and belies Plaintiff's claim that an investigation regarding age discrimination "can reasonably be expected to follow" the Intake Questionnaire. *See Park*, 71 F.3d at 907.

Plaintiff disputes this conclusion and argues that by stating in the Intake Questionnaire that "she was the most senior person in the IT divisions . . . and that a majority of people over 50 were laid off in 2007," she sufficiently raised the issue of age discrimination. Pl.'s Opp'n at 8 (citing Intake Questionnaire at 8-9, 11). This purported reference to age discrimination, however, is not "specific or elaborate enough to allow the EEOC to infer the existence" of Plaintiff's age discrimination claims. *Hodge*, 666 F. Supp. 2d at 22. Moreover, it does not allege that Plaintiff engaged in any protected activity opposing age discrimination from which an ADEA retaliation claim could arise. *See Lemmons*, 431 F. Supp. 2d at 91 (D.D.C. 2006) ("An activity is 'protected' for the purposes of a retaliation claim 'if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment'") (quoting *Coleman*, 422 F. Supp. 2d at 212-13)). Finally, and perhaps most significantly, the statements cited by Plaintiff do not actually refer to any age discrimination against Plaintiff herself.

Thus, for the reasons stated above, the Court concludes that Plaintiff failed to exhaust the administrative remedies for her ADEA discrimination and ADEA retaliation claims. Consequently, the Court shall grant Defendant's converted motions to dismiss the ADEA discrimination claim (Counts III) and the ADEA retaliation claim (Count IV).

      Plaintiff's Title VII Retaliation Claim

As a threshold matter, the Court reiterates that Plaintiff concedes, as she must, that she did not reference a Title VII retaliation claim in her EEOC Complaint. *See* Pl.'s Opp'n at 3-4. In short, Plaintiff's EEOC Complaint does not indicate that she engaged in any protected activity that could serve as a predicate for a retaliation claim. *See* Def.'s Mot. Ex. 1, at 1-2. The EEOC apparently agreed with this interpretation of Plaintiff's EEOC Complaint, as the EEOC filled in the boxes for discrimination based on race, sex, and national origin, but not for retaliation, in the Notice of Charge it prepared and sent to Defendant. *See id.* at 3.

Thus, similar to above, Plaintiff instead relies on the Intake Questionnaire to argue that she exhausted her administrative remedies for her Title VII retaliation claim. *See* Pl.'s Opp'n at 4, 6. In support of her reliance on the Intake Questionnaire, Plaintiff cites to *Federal Express Co. v. Holowecki*, 552 U.S. 389 (2008), and its progeny. *See* Pl.'s Opp'n at 4. In reply, Defendant argues that (1) the D.C. Circuit has already held in *Park v. Howard University*, 71 F.3d 904 (D.C. Cir. 1995), that intake questionnaires cannot replace an EEOC charge, Def.'s Reply at 3; and (2) in any event, the cases Plaintiff relies on are factually distinguishable from the instant case, *id.* at 4. For the reasons set forth below, however, the Court shall hold in abeyance Defendant's converted motion to dismiss Plaintiff's Title VII retaliation claim.

Unlike Plaintiff's ADEA claims, the Intake Questionnaire may contain some allegations that could be construed as allegations that Plaintiff was retaliated against for undertaking protected activity. *See, e.g.*, Intake Questionnaire at 6 (noting that in March 2007 Plaintiff "submitted a complaint in the Human Resources department at [Defendant] that [she] was being

subjected to repeated harassment . . . .").[3]  Thus, whether the Court may consider the Intake

Questionnaire appears to be determinative as to whether Plaintiff exhausted the administrative

remedies for her Title VII retaliation claim.  Furthermore, the Court agrees with the parties that

for this Court to consider the Intake Questionnaire as Plaintiff urges the Court to do, the Court

must first find that the Intake Questionnaire constitutes a charge of discrimination.  *See* Pl.'s

Opp'n at 4; Def.'s Reply at 3.  For two principal reasons, however, the Court shall hold this

issue, and consequently Defendant's converted motion, in abeyance until the parties submit to the

Court supplemental briefing on the two issues set forth below.

First, Defendant argues in its Reply that the Intake Questionnaire is not a charge of

discrimination in part because it is not verified, as required under 42 U.S.C. § 2000e-5(b).  Def.'s

Reply at 3.[4]  Although courts generally refuse to address arguments that are raised in a reply brief

for the first time, *see, e.g.*, *Am Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008)

("We need not consider this argument because plaintiffs . . . raised it for the first time in their

reply brief"), the Court realizes that because Plaintiff first mentioned her reliance on Intake

Questionnaire in her Opposition, the Reply was Defendant's first opportunity to address the

Intake Questionnaire.  Accordingly, the Court shall not dismiss Defendant's verification

---

[3] The Court notes, however, that whether the Intake Questionnaire in fact contains allegations regarding a Title VII retaliation claim is far from clear as Plaintiff has not actually specified the basis of her Title VII retaliation claim.  In the supplemental briefing that this Court orders below, Plaintiff is strongly urged to clarify the contours of her Title VII retaliation claim and the specific allegations in the Intake Questionnaire that allegedly exhaust her Title VII retaliation claim.

[4] The Court notes that at first glance, Defendant's argument appears to have some merit as the version of the Intake Questionnaire presented to this Court is not signed and does not otherwise indicate that Plaintiff verified its contents under oath.  *See generally* Intake Questionnaire; *see also* 42 U.S.C. § 2000e-5(b) (requiring "[c]harges" to "be in writing under oath or affirmation").

argument out of hand. Rather, the Court shall permit Plaintiff an opportunity to respond to Defendant's verification argument by requiring the parties to submit supplemental briefing as to whether the Intake Questionnaire is verified in accordance with 42 U.S.C. § 2000e-5(b).

Second, both parties have applied *Holowecki* in this case without first explicitly questioning whether *Holowecki* in fact applies. At issue in *Holowecki* was whether an intake questionnaire constituted a *timely* filed charge of discrimination. *See id.* at 394. In this case, in contrast, the issue is not whether Plaintiff timely filed a charge, but rather whether Plaintiff may rely upon allegations in her Intake Questionnaire to prove that she exhausted the administrative remedies for her Title VII retaliation claim. Under circumstances similar to those presented here, the Seventh Circuit Court of Appeals recently concluded that *Holowecki* is "inapposite" because "the issue is not whether a charge was timely filed (it was) but rather it included an allegation of retaliation." *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010). Whether *Holowecki* applies in this case appears to be a matter of first impression in this Circuit, an issue not directly addressed by the parties. Therefore, the Court shall also require the parties to submit supplemental briefing as to (1) whether *Holowecki* applies in this case; (2) whether the D.C. Circuit's holding in *Park* applies; (3) if *Holowecki* and its progeny do apply, what specific facts and rationales from these cases supports their respective arguments,[5] and (4) whether the Intake Questionnaire being filed with the Arlington Human Rights Commission, as opposed to the EEOC, affects whether the Intake Questionnaire's allegations may be considered.

---

[5] In the parties' filings currently under consideration, to the extent the parties even explained *Holowecki* and its progeny, the parties did so almost exclusively in regards to the cases' holdings and the titles of documents under review. In their supplemental briefing, the parties are urged to explain to the Court why a cited case's facts and reasoning support the parties' arguments.

In conclusion, the Court shall hold in abeyance Defendant's converted motion to dismiss Plaintiff's Title VII retaliation claim until the parties have submitted supplemental briefing to the Court addressing the following narrow issues: (1) whether the Intake Questionnaire meets 42 U.S.C. § 2000e-5(b)'s requirement that employment discrimination charges must be verified; and (2) whether *Holowecki* applies to the issue of whether Plaintiff may rely on the Intake Questionnaire's allegations to exhaust the administrative remedies for her Title VII retaliation claim. The Court shall set forth a schedule for the parties' supplemental briefing in the Conclusion to this Memorandum Opinion.

C.      *Defendant's Remaining Motions*

1.      Plaintiff's Purported Pattern and Practice Claims

Defendant also moves to dismiss Plaintiff's purported pattern and practice claims for failure to state a claim. Def.'s Mot. at 18-19. In response, Plaintiff argues that she may use evidence of Defendant's pattern and practices to support her claims of discrimination. Pl.'s Opp'n at 9. The Court shall deny Defendant's motion to dismiss Plaintiff's pattern and practice claims because there is no indication that Plaintiff is in fact asserting pattern and practice claims.

Defendant is correct that Plaintiff may not assert pattern and practice claims as this is not a class-action. *See Wagner v. Taylor*, 836 F.2d 578, 592 n.94 (D.C. Cir. 1987). However, the Complaint contains no separate count designating a pattern and practices claim and Plaintiff's Opposition indicates that the allegations regarding Defendant's pattern and practices are meant to support Plaintiff's claims that Defendant discriminated against her. *See* Pl.'s Opp'n at 9. There is no doubt that Plaintiff may use Defendant's pattern and practices in this manner. *See Williams v. Boorstin*, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980) (noting that "evidence of systematic or

general instances of discrimination can only be collateral to evidence of specific discrimination against the actual plaintiff") ; *see also Turner v. District of Columbia*, 383 F. Supp. 2d 157, 169 (D.D.C. 2005) ("[E]vidence of a pattern or practice is relevant to an individual's claim for discrimination").  Thus, the Court shall deny Defendant's motion to dismiss Plaintiff's purported pattern and practices claims because Plaintiff is not in fact asserting such claims.

Consequently, the Court shall also deny Defendant's related motion to strike the Complaint's allegations of Defendant's pattern and practice as immaterial and impertinent.  *See* Def.'s Mot. at 19-20.  As Plaintiff is allowed to use pattern and practice evidence to support her discrimination claims, such allegations are not immaterial or impertinent.  *See* Fed. R. Civ. P. 12(f) (allowing a court to strike "any redundant, immaterial, impertinent, or scandalous matter").

2.　　Plaintiff's Title VII Claims

a.　　Failure to exhaust administrative remedies

Defendant moves to dismiss Plaintiff's Title VII claims based on discrimination in hiring, compensation and benefits, performance evaluations, and demotions for failure to exhaust administrative remedies.  *See* Def.'s Mot. at 8-10 (citing Compl. ¶ 71).  Plaintiff's Complaint and Opposition indicate, however, that Plaintiff has not asserted the abovementioned Title VII claims.  *See* Compl. ¶¶ 78-79; *see* Pl.'s Opp'n (containing no reference to such claims).  The allegations Defendant cites to in support of this argument are better understood as part of Plaintiff's abovementioned allegations regarding Defendant's pattern and practices.  *See* Compl. ¶ 71 ("[Defendant], through its agents and officers, has engaged in a pattern and practice of discriminating against minority employees in terms of their hiring, compensation and benefits,

performance evaluations, promotions and demotions, and terminations."). Accordingly, the Court shall deny Defendant's motions to dismiss Plaintiff's Title VII claims based on discrimination in hiring, compensation and benefits, performance evaluations, and demotions for failure to exhaust administrative remedies.

b.       Barred by the statute of limitations

In addition, Defendant moves to dismiss Plaintiff's Title VII claims based on events arising prior to July 17, 2007, as barred by Title VII's 300-day statute of limitations. Def.'s Mot. at 11; *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (providing that in states with an agency with authority to grant or seek relief for alleged unlawful employment practices, the deadline under Title VII to submit a charge is 300 days from the alleged discriminatory incident). In response, Plaintiff argues that because her discrimination was ongoing, the continuing violation doctrine prevents her claims from being barred by the statute of limitations. *See* Pl.'s Opp'n at 9.[6] For the reasons explained below, the Court shall grant Defendant's motion to dismiss Plaintiff's Title VII claims based on discrete discriminatory acts occurring before July 17, 2007.

The Court has already dismissed Plaintiff's Title VII hostile work environment claim for failure to state a claim. As a result, Plaintiff's remaining Title VII claims are only those for discrete acts of discrimination. This is significant because Plaintiff cannot rely upon the continuing violation doctrine to prevent her discrete acts of discrimination from being barred by the statute of limitations. *Compare. Morgan*, 536 U.S. 101, 118 (2002) ("It does not matter, for

---

[6] The Court notes that Plaintiff does not argue that the Intake Questionnaire somehow alters the applicable statute of limitations. *See* Pl.'s Opp'n at 9. Accordingly, the Court shall not address this issue.

purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period"), *with id.* at 113 ("discrete discriminatory acts are not actionable if time barred . . . . Each discrete discriminatory act starts a new clock for filing charges alleging that act."). Therefore, the Court shall grant Defendant's motion to dismiss Plaintiff's Title VII claims based on events occurring prior to July 17, 2007.

3.    Plaintiff's § 1981 Claims

Defendant also moves to dismiss Plaintiff's § 1981 claims arising out of discrete acts of discrimination that occurred prior to November 25, 2005, as being barred by the statute of limitations. *See* Def.'s Mot. at 13. In response, Plaintiff does not specifically address § 1981's statute of limitations, but argues that the continuing violation doctrine prevents her claims from being dismissed. Pl.'s Opp'n at 9. As explained above, however, the continuing violation doctrine does not apply to discrete acts of discrimination. *See Morgan*, 536 U.S. at 113. As Defendant moves to dismiss only § 1981 claims based on discrete acts of discrimination, the Court finds that Plaintiff's argument based on continuing violation doctrine lacks support. *See* Def.'s Mot. at 13 (seeking dismissal of "claims based on Plaintiff being allegedly 'ostracized' and 'forced to issue a written apology' after an incident involving a harassment complaint against her in August 2004."). Accordingly, the Court shall grant Defendant's motion to dismiss Plaintiff's § 1981 claims based on events arising prior to November 25, 2005—four years before Plaintiff filed the Complaint. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (applying 28 U.S.C. § 1658's four year statute of limitations to § 1981 claims).

### D.       Plaintiff's Motion to Amend Her Complaint

In her Opposition, Plaintiff requested leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a) if the Court dismisses any of her age or retaliation claims. *See* Pl.'s Opp'n at 10. Although not styled as a motion for leave to amend, the Court shall construe it as such. Nevertheless, the Court shall deny this construed motion because it violates Local Civil Rule 7(i) by failing to include "an original of the proposed pleading as amended." Thus, the Court shall dismiss Plaintiff's construed motion for leave to amend without discussing its merits. *See Banks v. Kramer*, 603 F. Supp. 2d 3, 6-7 (D.D.C. 2009).

Additionally, even if the Court were to reach the merits of Plaintiff's construed motion for leave to amend, the Court would nonetheless deny it as futile. After a party has lost the right to amend its pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice requires." Fed. R. Civ. P. Rule 15(a)(2). Courts should grant leave to amend so long as there is no indication of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficience by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted). In this case, the Court has dismissed Plaintiff's ADEA discrimination and ADEA retaliation claims (Counts III & IV) because Plaintiff failed to exhaust her administrative remedies. Plaintiff cannot cure her failure to exhaust administrative remedies by amending her Complaint. Accordingly, the Court concludes that Plaintiff's motion for leave to amend the Complaint in regards to her ADEA claims is futile and shall be denied.

## IV. CONCLUSION

In conclusion, the Court shall GRANT-IN-PART, DENY-IN-PART, and HOLD-IN-ABEYANCE-IN-PART Defendant's [4] Partial Motion to Dismiss and DENY Plaintiff's construed motion for leave to amend the Complaint.  Specifically, the Court shall: (1) grant Defendant's converted motion to dismiss Plaintiff's Title VII hostile work environment claim (Count I) for failure to state a claim; (2) grant Defendant's converted motion to dismiss Plaintiff's ADEA claims (Counts III & IV) for failure to exhaust administrative remedies; (3) hold in abeyance Defendant's converted motion to dismiss Plaintiff's Title VII retaliation claim (Count IV) for failure to exhaust administrative remedies; (4) deny Defendant's motion to dismiss Plaintiff's purported pattern and practice claims for failure to state a claim; (5) deny Defendant's motion to strike the Complaint's allegations of Defendant's pattern and practices; (6) deny Defendant's motion to dismiss, for failure to exhaust administrative remedies, Plaintiff's purported Title VII claims for discrimination in hiring, compensation and benefits, performance evaluations, and demotions; (7) grant Defendant's motion to dismiss as time barred Plaintiff's remaining Title VII claims based on events occurring prior to July 17, 2007; (8) grant Defendant's motion to dismiss as time barred Plaintiff's § 1981 claims (Count II) based on discrete acts of discrimination occurring prior to November 25, 2004; and (9) deny Plaintiff's construed motion for leave to amend the Complaint.

The supplemental briefing on the issues requested above—and on those issues only—shall be filed by the parties on or before October 29, 2010.  The parties shall be permitted to file oppositions to the other party's supplemental briefing, with such oppositions due on or

before November 12, 2010.  Replies, if any, shall be due on or before November 26, 2010.   An

appropriate Order accompanies this Memorandum Opinion.

Date September 30, 2010

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge
