# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KALPANA A. AHUJA,

           Plaintiff,

   v.                                                                      Civil Action No. 09-02246 (CKK)

DETICA INC.,

           Defendant.

## MEMORANDUM OPINION AND ORDER
### (April 16, 2012)

Plaintiff Kaplana Ahuja brings this employment discrimination and retaliation action against her former employer, Defendant Detica Inc.  In a prior decision, the Court granted in part, denied in part, and held in abeyance in part Defendant's [4] Partial Motion to Dismiss Complaint and Motion to Strike Certain Allegations ("Motion to Dismiss").[1]  The Court held Defendant's Motion to Dismiss in abeyance insofar as it sought the dismissal of Plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII").  The matter now returns to this Court upon the parties' supplemental briefing addressing whether Plaintiff exhausted her administrative remedies with respect to these claims.  Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court concludes that Plaintiff failed to exhaust her administrative remedies with respect to her Title VII

---

[1]  Because the parties relied on materials outside the pleadings, the Court partially converted the Motion to Dismiss into a motion for summary judgment.

retaliation claims.[2]  Accordingly, Defendant's Motion to Dismiss shall be GRANTED in

remaining part and Plaintiff's Title VII retaliation claims shall be DISMISSED.

## I. BACKGROUND

The Court assumes familiarity with its prior decision, incorporated herein, which includes

a detailed description of the factual and procedural background of this case.  *See Ahuja v. Detica*

*Inc.*, 742 F. Supp. 2d 96 (D.D.C. 2010).  Accordingly, the Court shall confine its discussion to

the background most germane to the discrete issues presently before the Court.

### A.     Brief Overview of Plaintiff's Factual Allegations

Plaintiff, an Asian-Indian female, began working for Defendant in its Information

Technology ("IT") Division in January 2002, eventually becoming a project manager.  She

alleges that, despite six years of superior performance, her supervisors suppressed her promotion

to a director-level position in the IT Division and terminated her employment on December 31,

2007, shortly after she requested maternity leave.  Plaintiff further claims that her supervisors

ostracized her after one of her subordinates filed a claim of harassment against her, and that this

ostracism continued and intensified when Plaintiff herself complained that she was being

discriminated against by coworkers based on her race, national origin, and gender.  In November

2007, the same month Plaintiff informed her supervisors of her pregnancy, Plaintiff was told she

---

[2]  While the Court renders its decision on the record as a whole, its consideration has focused on the following documents, listed in the chronological order of their filing: Def.'s [4] Mem. of P. & A. in Supp. of its Partial Mot. to Dismiss Compl. & Mot. to Strike Certain Allegations ("Def.'s [4] Mem."); Pl.'s [9] Opp'n to Def.'s Partial Mot. to Dismiss & Mot. to Strike Certain Allegations ("Pl.'s [9] Mem."); Def.'s [10] Reply in Supp. of its Partial Mot. to Dismiss Compl. & Mot. to Strike Certain Allegations; Pl.'s [13] Supplemental Br. on Various Issues Required by the Court's Order ("Pl.'s [13] Mem."); Def.'s [14] Supplemental Br. in Supp. of its Partial Mot. to Dismiss Compl.; Def.'s [15] Opp'n in Resp. to Pl.'s Supplemental Br. on Various Issues Required by the Court's Order; Pl.'s [16] Mem. in Opp'n to Def.'s Supplemental Br. in Supp. of Def.'s Partial Mot. to Dismiss Compl.; Def.'s [18] Supplemental Reply Br. in Supp. of its Partial Mot. to Dismiss; Pl.'s [19] Reply Mem. to Def.'s Opp'n in Resp. to Pl.'s Supplemental Br. on Various Issues Required by the Court's Order ("Pl.'s [19] Mem.").

would be terminated as part of a reduction in force effective December 31, 2007.  In January

2008, Defendant offered to rehire Plaintiff with reduced pay and benefits.

    **B.**    **Background Relating to Plaintiff's Use of Administrative Remedies**

On December 4, 2007, Plaintiff spoke with a Human Rights Investigator for the

Arlington County Human Rights Commission (the "ACHRC"), a local Fair Employment

Practices ("FEP") Agency authorized to process employment discrimination and retaliation

complaints under Title VII.  *See* 42 U.S.C. § 2000e-5(c); 29 C.F.R. § 1601.80.  Later that same

day, the Investigator e-mailed Plaintiff a copy of the ACHRC's Intake Questionnaire.  *See* Pl.'s

[9] Mem. Ex. 2 (E-mail from D. Sumlin to K. Ahuja dated Dec. 4, 2007) at 1.  The Investigator

informed Plaintiff that he would "review the completed [Intake Questionnaire] to formulate an

official complaint of discrimination and have [Plaintiff] come in to actually file the complaint."

*Id.*  According to the Investigator, the Intake Questionnaire would "enable [the ACHRC] to

better understand the specific[s] of her allegations," and he cautioned Plaintiff "that the

submission of the completed questionnaire does not constitute the filing of a complaint."  *Id.*

Similarly, the Intake Questionnaire itself begins with the following statement:

> The information requested on this form will help us to understand
> your allegations.  Please complete the information to the best of
> your ability.  An intake officer will review the information and talk
> to you about filing a complaint after you have completed this form.

Pl.'s [9] Mem. Ex. 1 (Intake Questionnaire) at 1.  The Intake Questionnaire concludes by

warning that the party completing the form has "the responsibility to cooperate with [the] office

in order to continue the process of filing a complaint" and that the "failure to do so will result in

the termination of this process."  *Id.* at 12.

Plaintiff e-mailed a completed but unsigned Intake Questionnaire to the ACHRC

Investigator on January 2, 2008.  *See* Pl.'s [9] Mem. Ex. 2 (E-mail from K. Ahuja to D. Sumlin

dated Jan. 2, 2008) at 1.  In her e-mail, Plaintiff wrote, "I do not know if the e-mail submission is sufficient or if you need a signed copy as well.  If so, I can fax a signed copy to you.  Please let me know when you have a moment." *Id.*  On the Intake Questionnaire, Plaintiff checked boxes indicating that she believed Defendant discriminated against her based on her race, sex, and national origin and retaliated against her based on her protected activity. *See* Pl.'s [9] Mem. Ex. 1 (Intake Questionnaire) at 4.  The Intake Questionnaire spans twelve pages, eight of which set forth Plaintiff's factual allegations. *See id.* at 4-11.

For dual filing purposes, Plaintiff cross-filed a Complaint of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 12, 2008. *See* Def.'s [4] Mem. Ex. 1 (Charge) at 2.  In her EEOC Charge, Plaintiff alleged that Defendant discriminated against her "because of [her] sex, female, relating to pregnancy; race (Asian); and national origin (India); in violation of Title VII of the Civil Rights Act of 1964." *Id.* at 1.  On May 21, 2008, the EEOC issued Defendant a Notice of Charge of Discrimination ("Notice of Charge"), indicating that Plaintiff had filed a charge of discrimination against Defendant that raised allegations of discrimination based on race, sex, and national origin. *See* Def.'s [4] Mem. Ex. 1 (Notice of Charge) at 1.  Consistent with Plaintiff's Charge, the EEOC did not identify retaliation as a basis for relief in the Notice of Charge. *Id.*  On September 2, 2009, Plaintiff received a Notice of Right to Sue from the EEOC. *See* Compl. Ex. A (EEOC Right to Sue Letter) at 1.  She then commenced this action on November 25, 2009.

## C.   The Remaining "Live" Claims

Plaintiff's Complaint includes four counts.

In Count I, Plaintiff alleges that Defendant violated Title VII by subjecting her to disparate treatment and a hostile work environment based on race, sex, pregnancy, and national

origin. *See* Compl. ¶¶ 78-79.  In its prior decision, the Court (1) dismissed Plaintiff's Title VII

hostile work environment claim for failure to state a plausible claim for relief; (2) dismissed

Plaintiff's Title VII discrimination claims insofar as they are based on discrete discriminatory

acts occurring before July 17, 2007 as barred by the statute of limitations;[3] (3) clarified that

Plaintiff is not pursuing a pattern and practice claim under Title VII; and (4) clarified that

Plaintiff is not seeking relief under Title VII based on discrimination in hiring, compensation and

benefits, performance evaluations, or demotions.  *See Ahuja*, 742 F. Supp. 2d at 103-05, 110-11.

As a result, Plaintiff's Count I remains "live" only insofar as Plaintiff seeks relief under Title VII

for discrete acts of discrimination occurring on or after July 17, 2007 that are not based on

hiring, compensation and benefits, performance evaluations, or demotions.

   In Count II, Plaintiff alleges that Defendant violated 42 U.S.C. § 1981 ("Section 1981")

by subjecting her to disparate treatment and a hostile work environment based on race and

retaliation based on her participation in protected activity.  *See* Compl. ¶¶ 80-81.  In its prior

decision, the Court dismissed Plaintiff's Section 1981 claims insofar as they are based on

discrete acts predating November 25, 2005 as barred by the statute of limitations.[4]  *See Ahuja*,

742 F. Supp. 2d at 111-12.  In addition, although the Court's prior decision did not expressly

mention Section 1981 in concluding that Plaintiff failed to state a plausible claim for a hostile

---

[3]  In the [11] Order accompanying its prior decision, the Court mistakenly referred to March 8,
2007 instead of July 17, 2007, which was the date discussed in the Court's analysis.  *See Ahuja*,
742 F. Supp. 2d at 111.  The July 17, 2007 date reflects the 300-day limitations period predating
the filing of Plaintiff's Charge.  Accordingly, the Court shall issue an Erratum to its prior Order
to clarify that Plaintiff's claims under Title VII are dismissed insofar as they are based on events
occurring prior to July 17, 2007.

[4]  In the [11] Order accompanying its prior decision, the Court mistakenly referred to November
25, 2004 instead of November 25, 2005, which was the date discussed in the Court's analysis.
*See Ahuja*, 742 F. Supp. 2d at 111-12.  The November 25, 2005 date reflects the four-year
limitations period predating Plaintiff's commencement of this action.  Accordingly, the Court
shall issue an Erratum to its prior Order to clarify that Plaintiff's claims under Section 1981 are
dismissed insofar as they are based on events occurring prior to November 25, 2005.

work environment, Defendant's argument, and the Court's conclusion, apply equally to the extent Plaintiff seeks relief for an alleged hostile work environment under Section 1981. *See id.* at 103-05; Def.'s [4] Mem. at 13-17; *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997); *Hunter v. Ark Rests. Corp.*, 3 F. Supp. 2d 9, 14 (D.D.C. 1998).  Accordingly, the Court shall correct this oversight by dismissing Plaintiff's Section 1981 hostile work environment claim.  For this reason, Plaintiff's Count II remains live only insofar as Plaintiff seeks relief under Section 1981 for discrete acts of discrimination or retaliation occurring on or after November 25, 2005.

In Count III, Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act ("ADEA") by subjecting her to discrimination based on age.  *See* Compl. ¶¶ 82-83.  In its prior decision, the Court dismissed Plaintiff's ADEA discrimination claims in their entirety based on Plaintiff's failure to exhaust her administrative remedies.  *See Ahuja*, 742 F. Supp. 2d at 106-08.  As a result, Count III is no longer live in any respect.

In Count IV, Plaintiff alleges that Defendant violated Title VII and the ADEA by subjecting her to retaliation based on her protected activity.  *See* Compl. ¶¶ 84-87.  In the heading preceding her description of Count IV, Plaintiff also identifies Section 1981 as a basis for relief.  Insofar as Plaintiff intended to seek relief under Section 1981 in connection with Count IV, the claim is duplicative of Count II.  *See id.* ¶ 80.  For purposes of clarity and the avoidance of duplication, the Court shall dismiss Plaintiff's Count IV insofar as it seeks relief under Section 1981.  Meanwhile, in its prior decision, the Court (1) dismissed Plaintiff's ADEA retaliation claims in their entirety based on Plaintiff's failure to exhaust her administrative remedies; and (2) held in abeyance Defendant's Motion to Dismiss insofar as it sought the dismissal of Plaintiff's Title VII retaliation claims based on Plaintiff's purported failure to

exhaust her administrative remedies in order to afford the parties an opportunity to submit supplemental briefing on the issue. *See Ahuja*, 742 F. Supp. 2d at 106-11.  As a result, Count IV currently remains live insofar as Plaintiff seeks relief under Title VII for discrete acts of retaliation.

To summarize, only some aspects of three of the four counts identified in the Complaint remain live at this time.

First, Count I remains live insofar as Plaintiff seeks relief under Title VII for discrete acts of discrimination based on race, sex, pregnancy, and national origin occurring on or after July 17, 2007 that are not based on hiring, compensation and benefits, performance evaluations, or demotions.  So far as the Court can tell, only two actions fall into this first category: (1) the alleged denial of a director-level promotion in or about November 2007; and (2) the termination of Plaintiff's employment on December 31, 2007.  *See* Compl. ¶¶ 18, 38, 41-42; Def.'s [4] Mem. Ex. 1 (Charge) at 1-2 (alleging that Plaintiff was "denied promotion to a director-level IT position" and was unlawfully terminated on December 31, 2007; identifying the most recent challenged action as occurring on November 30, 2007).  To the extent the Court's understanding is incorrect, Plaintiff must, by no later than May 1, 2012, bring the matter to the Court's attention by filing a Notice that identifies each and every employment action challenged through Count I, as limited by the Court's decisions, with precise citations to all the supporting allegations in the Complaint.

Second, Count II remains live insofar as Plaintiff seeks relief under Section 1981 for discrete acts of discrimination or retaliation occurring on or after November 25, 2005.  So far as the Court can tell, only the same two actions fall into this second category: (1) the alleged denial of a director-level promotion in or about November 2007; and (2) the termination of Plaintiff's

employment on December 31, 2007. To the extent the Court's understanding is incorrect,

Plaintiff must, by no later than May 1, 2012, bring the matter to the Court's attention by filing a

Notice that identifies each and every employment action challenged through Count II, as limited

by the Court's decisions, with precise citations to all the supporting allegations in the Complaint.

Third, Count IV remains live insofar as Plaintiff seeks relief under Title VII for discrete

acts of retaliation. Again, so far as the Court can tell, only the same two actions fall into this

third category: (1) the alleged denial of a director-level promotion in or about November 2007;

and (2) the termination of Plaintiff's employment on December 31, 2007. However, because the

Court concludes below that Plaintiff has failed to exhaust her administrative remedies in

connection with her Title VII retaliation claims, the uncertainty, if any, about the scope of her

claims is largely immaterial.

## II. LEGAL STANDARD

Defendant's Motion to Dismiss has been converted into a motion for summary judgment

under Federal Rule of Civil Procedure 56 insofar as it relates to the question of whether Plaintiff

has failed to exhaust her administrative remedies. *See Ahuja*, 742 F. Supp. 2d at 103. Summary

judgment is appropriate where "the movant shows that there is no genuine dispute as to any

material fact and [that it] . . . is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The mere existence of some factual dispute is insufficient on its own to bar summary judgment;

the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may

summary judgment be avoided based on just any disagreement as to the relevant facts; the

dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of her position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

The sole question currently before the Court is whether Plaintiff exhausted her administrative remedies with respect to her Title VII retaliation claims. Before commencing an action based on Title VII in federal court, a plaintiff must first exhaust her administrative remedies by filing a timely charge of discrimination. *Lewis v. City of Chicago, Ill.*, __ U.S. __, 130 S. Ct. 2191, 2196-97 (2010). The subsequent lawsuit is then limited "to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1996). More specifically, a plaintiff's claims "must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

The exhaustion of administrative remedies is a non-jurisdictional affirmative defense. *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). It has often been said that it "should not be construed to place a heavy technical burden" on the Title VII plaintiff, but neither is it "a mere technicality." *Park*, 71 F.3d at 907 (internal quotations marks omitted). This is because the exhaustion requirement serves the salutary purposes of (1) providing an opportunity for the administrative investigation of the claimant's allegations; (2) affording the charged party prompt notice of those allegations; (3) promoting the informal resolution of claims; and (4) ensuring the preservation of evidence relating to the claimant's allegations. *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1376 (D.C. Cir. 2008); *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 276 (D.D.C. 2011). In

10

recognition of the importance of these interests, "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907.

Plaintiff concedes, as she must, that she failed to identify retaliation as a basis for relief in her formal EEOC Charge. *See* Pl.'s [9] Mem. at 3-4. In her Charge, Plaintiff alleged only that Defendant discriminated against her based on her sex, race, and national origin; it is, quite simply, devoid of any reference to retaliation or protected activity. *See* Def.'s [4] Mem. Ex. 1 (Charge) at 1-2. As a result, if the Court's analysis is limited to the Plaintiff's formal Charge, the conclusion is ineluctable that Plaintiff failed to exhaust her administrative remedies in connection with her Title VII retaliation claims because the administrative investigation could not "reasonably be expected" to encompass allegations of retaliation. *Park*, 71 F.3d at 907 (quoting *Chisholm*, 665 F.2d at 491).

Recognizing this, Plaintiff attempts to salvage her Title VII retaliation claims by pointing to the Intake Questionnaire that she submitted to the ACHRC. Unlike Plaintiff's formal EEOC Charge, the Intake Questionnaire at least arguably contains statements that could be construed as alleging that Plaintiff was retaliated against for engaging in protected activity and, indeed, Plaintiff checked the box for retaliation when completing the form.[5] *See* Pl.'s [9] Mem. Ex. 1 (Intake Questionnaire) at 4, 6. However, Plaintiff's resort to the Intake Questionnaire that she submitted to the ACHRC is unavailing.

---

[5] Nonetheless, as this Court observed in its prior decision, it is "far from clear" whether the Intake Questionnaire sets forth the factual predicate for the specific Title VII retaliation claims at issue in this case for the simple reason that Plaintiff "has not actually specified the basis for her Title VII retaliation claim[s]." *Ahuja*, 742 F. Supp. 2d at 108. Despite being "strongly urged to clarify the contours of her Title VII claim[s] and the specific allegations in the Intake Questionnaire that allegedly exhaust her Title VII retaliation claim" in her supplemental briefing, *id.* at 108 n.3, Plaintiff has done nothing of the sort.

Plaintiff relies on the United States Supreme Court's decision in *Federal Express Corporation v. Holowecki*, 552 U.S. 389 (2008). In that case, the Supreme Court faced the question of whether an EEOC intake questionnaire, accompanied by a detailed signed affidavit, sufficed to qualify as a timely charge of discrimination under the ADEA. Plaintiff's reliance on *Holowecki* is misplaced. That decision is not controlling here because the "the immediate question before [the Supreme Court in *Holowecki* was] the *timeliness* of the suit." *Id.* at 394 (emphasis added). In contrast, the question in this case is not whether Plaintiff filed a timely charge, but rather whether she can expand the substantive scope of this action by relying on allegations that appear in her Intake Questionnaire that are altogether absent from her formal Charge. On this latter question, other courts have concluded, and this Court agrees, that even after *Holowecki* "[a] plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to [a timely] charge itself." *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010); *see also Ventura v. Monclair State Univ.*, Civil Action No. 08-5792 (SRC), 2011 WL 550720, at *7 (D.N.H. Feb. 9, 2011) ("The law is clear that when contemplating the scope of the subsequent law suit it is only the claims made in the formal charge that may be considered and not allegations in ancillary paperwork."); *Middleton v. Motley Rice, LLC*, Civil Action No. 2:08-3256-CWH, 2010 WL 3167360, at *6 (D.S.C. Aug. 9, 2010) ("Although it is true that the plaintiff circled 'race' and 'retaliation' on the questionnaire, this questionnaire cannot be used to amend the subsequently filed EEOC charge form.") (internal citation omitted), *aff'd*, 445 F. App'x 651 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 2012 WL 136937 (Mar. 19, 2012); *Cargo v. Kansas City S. Ry. Co.*, Civil Action No. 05-2010 (W.D. La. July 13, 2010) ("[B]ecause the Charge Questionnaire does not contain the only timely written statement of [plaintiff's] allegations . . . the Court may look only to the substance of [his] formal administrative Charge of

Discrimination."); *Carr v. New Jersey*, Civil Action No. 09-913 (WJM), 2010 WL 2539782, at *5 (D.N.J. June 17, 2010) ("[W]hile courts may construe a Charge liberally to determine the proper scope of a reasonable EEOC investigation and the ensuing litigation, they have declined to use the Intake Questionnaire for that purpose."); *Kellam v. Independence Charter Sch.*, 735 F. Supp. 2d 248, 253 (E.D. Pa. 2010) ("If a claim is initially mentioned in the charge questionnaire but is not included in the formal charge, then this claim is not exhausted.").

Indeed, this conclusion is virtually compelled by the United States Court of Appeals for the District of Columbia Circuit's decision in *Park v. Howard University*, 71 F.3d 904 (D.C. Cir. 1995), *cert. denied*, 519 U.S. 811 (1996), in which the Court of Appeals rejected a Title VII plaintiff's attempt to rely on the contents of an intake questionnaire in order to expand the substantive scope of her actionable allegations, warning courts against "treat[ing] Intake Questionnaires willy-nilly as charges." *Id.* at 909 (quoting *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992)). Although predating *Holowecki*, the Court of Appeals' decision in *Park* remains good law because it addresses the question of when a plaintiff can expand the substantive scope of a federal action by relying on allegations that appear in an intake questionnaire that are absent from a timely charge. That particular question was not answered by *Holowecki*, which, as aforementioned, was addressed to the timeliness of a plaintiff's suit, not its substantive scope. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010); *Morrow v. Metro. Transit Auth.*, Civil Action No. 08-6123 (DLC), 2009 WL 1286208, at *6 (S.D.N.Y. May 8, 2009).

There are good reasons for maintaining this distinction. "Although there are sound reasons for not considering the later-filed formal charge when assessing whether an earlier filing was timely, those reasons largely disappear when the issue at hand is a determination of the

scope of the discriminatory conduct that the employee wants the EEOC [or local FEP Agency] to investigate and then litigate should mediation prove unsuccessful." *Morrow*, 2009 WL 1286208, at *6 (internal citation omitted).  As the United States Court of Appeals for the Third Circuit has observed in a similar context:

> The EEOC Charge Form and the Intake Questionnaire serve different purposes.  An Intake Questionnaire facilitates pre-charge filing counseling and allows the Commission to determine whether it has jurisdiction to pursue a charge.  Moreover, the Intake Questionnaire is not shared with the employer during the pendency of the EEOC investigation.  On the other hand, an EEOC Charge Form serves to define the scope of the Commission's investigation and to notify the defendant of the charges against it.  A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself.  Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer.

*Barzanty*, 361 F. App'x at 415 (internal quotations and citations omitted).  Where, as here, "the charging instrument does not name a particular type of discrimination . . . , there is no reason to believe that the EEOC [or FEP Agency] would activate its enforcement mechanism and commence the remedial process with respect to that specific type of discrimination," and "[t]he goals of the exhaustion requirement would consequently go unfulfilled."  *Morrow*, 2009 WL 1286208, at *6 (emphasis omitted).

Such concerns are particularly pronounced in this case because Plaintiff concedes that Defendant "did not have notice of the retaliation claim until [her] suit was filed in this Court." Pl.'s [13] Mem. at 4; *see also* Pl.'s [9] Mem at 3 (admitting that the ACHRC "Intake Questionnaire is not sent to the employer.").  Consequently, treating Plaintiff's ACHRC Intake Questionnaire as a charge of retaliation would "be to dispense with the requirement of notification of the prospective defendant." *Park*, 71 F.3d at 909.  Furthermore, moving beyond the contours of this specific case, Plaintiff acknowledges that, "[i]n a vast majority of case [sic],

plaintiffs first file their intake questionnaires before a charge is prepared." Pl.'s [19] Mem. at 1.

Accordingly, permitting Title VII plaintiffs to routinely reach back to the contents of intake

questionnaires to expand the scope of a subsequent lawsuit would, if not eviscerate, then at the

very least significantly undermine the policies underlying the exhaustion requirement Congress

decided to impose upon Title VII plaintiffs.

Regardless, even assuming, for the sake of argument, that *Holowecki* applied, the

circumstances of this case would not warrant treating Plaintiff's Intake Questionnaire as a charge

of discrimination. Even in *Holowecki*, the Supreme Court contemplated that not every

completed intake questionnaire will necessarily constitute a proper charge. *See Holowecki*, 552

U.S. at 405-06. Here, Plaintiff's Intake Questionnaire and the circumstances surrounding its

submission make it clear that the Intake Questionnaire was merely the first step in a process that

might eventually lead to the filing of a formal charge. First, the Intake Questionnaire itself

clearly informed Plaintiff that this was the case. The Intake Questionnaire instructed Plaintiff

that "[t]he information requested on th[e] form will help [the ACHRC] to understand [her]

allegations," and contemplated that "[a]n intake officer [would] review the information" at some

future point and "talk to [Plaintiff] about filing a complaint." Pl.'s [9] Mem. Ex. 1 (Intake

Questionnaire) at 1. It concluded by advising Plaintiff that the process was ongoing and that she

must "cooperate with [the] office in order to continue the process of filing a complaint." *Id.* at

12. Second, the communications Plaintiff had with ACHRC staff reinforced the notion that the

Intake Questionnaire was merely the first step in a process that might eventually lead to the filing

of a formal charge. The ACHRC Investigator that communicated with Plaintiff informed her

that, even after she submitted the Intake Questionnaire, she would still have to "come in to

actually file the complaint," and he expressly warned Plaintiff "that the submission of the

completed questionnaire does not constitute the filing of a complaint." *See* Pl.'s [9] Mem. Ex. 2 (E-mail from D. Sumlin to K. Ahuja dated Dec. 4, 2007) at 1.  Third, "the fact [that Plaintiff] filed a timely charge suggests [s]he did not intend [her] intake questionnaire to function as a charge." *Francois v. Miami Dade Cnty., Port of Miami*, 432 F. App'x 819, 822 (11th Cir. 2011). Despite having ample opportunity to do so, Plaintiff has never offered a credible explanation as to why she failed to include a reference to retaliation in her formal Charge, which, unlike her Intake Questionnaire, is sworn and notarized by a notary public. *See* Def.'s [4] Mem. Ex. 1 (Charge) at 1-2.  Plaintiff does note that the Charge was prepared by ACHRC staff, something Defendant does not dispute.  But even assuming that to be the case, "because a plaintiff has an opportunity to review [her] charge prior to signing it, courts are reluctant to excuse [a plaintiff's failure to exhaust] on the grounds that the EEOC [or FEP Agency] investigator failed to include certain information in the charge." *Marcels v. Corr. Corp. of Am.*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008); *see also Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) ("If [the plaintiff] had been dissatisfied with the staff's understanding of her answers, all she had to do was point this out and ask for an addition.").  When these circumstances are viewed "from the standpoint of an objective observer," *Holowecki*, 552 U.S. at 402, no reasonable person would consider the Intake Questionnaire to be tantamount to a formal charge.[6]

---

[6]  Contributing to this conclusion, although not dispositive on its own, is the fact that Plaintiff's Intake Questionnaire was not signed, let alone verified. *See Francois*, 432 F. App'x at 822; *Williams v. Waffle House*, Civil Action No. 10-357-M2, 2010 WL 4512819, at *2 n.4 (M.D. La. Nov. 2, 2010); *but see Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002).  Unlike the ADEA, which was the statute at issue in *Holowecki*, Title VII requires a charge to be verified. *See* 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9; *see also Holowecki*, 552 U.S. at 393 (recognizing that "the EEOC enforcement mechanisms . . . for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII," and warning against the application of rules "under one statute to a different statute without careful and critical examination").

### IV.  CONCLUSION AND ORDER

The Court has considered the remaining arguments tendered by Plaintiff and finds them to be without merit.  In the final analysis, there are myriad independent reasons why Plaintiff cannot resort to her Intake Questionnaire to salvage her Title VII retaliation claims.  Meanwhile, because Plaintiff's formal Charge is devoid of any reference to retaliation or protected activity, the Court concludes that Plaintiff has failed to exhaust her administrative remedies with respect to her Title VII retaliation claims.  Accordingly, it is, this 16th day of April, 2012, hereby

**ORDERED** that Defendant's [4] Motion to Dismiss is GRANTED insofar as it seeks the dismissal of Plaintiff's Title VII retaliation claims under Count IV of the [1] Complaint based on Plaintiff's failure to exhaust her administrative remedies.  In addition, as set forth in Part I.C, Count IV is DISMISSED insofar as it seeks relief under Section 1981, because such relief is duplicative of the relief sought in Count II.  Because no other aspect of Count IV remains "live," Count IV is DISMISSED in its entirety.

It is **FURTHER ORDERED**, as set forth in Part I.C, that Count II is DISMISSED insofar as Plaintiff seeks relief for an alleged hostile work environment under Section 1981 for failure to state a plausible claim for relief.

As a result, only the following claims remain live in this action:

- Count I remains live insofar as Plaintiff seeks relief under Title VII for discrete acts of discrimination based on race, sex, pregnancy, and national origin occurring on or after July 17, 2007 that are not based on hiring, compensation and benefits, performance evaluations, or demotions.

- Count II remains live insofar as Plaintiff seeks relief under Section 1981 for discrete acts of discrimination or retaliation occurring on or after November 25, 2005.

As set forth in Part I.C, the Court understands only two employment actions to fall within the ambit of the live aspects of Counts I and II: (1) the alleged denial of a director-level promotion in or about November 2007; and (2) the termination of Plaintiff's employment on December 31, 2007.

It is **FURTHER ORDERED** that, to the extent the Court's understanding is incorrect, by no later than **May 1, 2012,** Plaintiff shall file a Notice with the Court that identifies each and every employment action challenged through Counts I and II, as limited by the Court's decisions, with precise citations to all the supporting allegations in the Complaint.

It is **FURTHER ORDERED** that a Scheduling Conference shall be held on **May 21, 2012, at 11:30 a.m.**, before Judge Colleen Kollar-Kotelly in Courtroom 28A on the Sixth Floor of the Courthouse Annex.  The parties shall meet and confer and submit their Joint Statement in accordance with Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3 by no later than **May 14, 2012**, addressing each of the topics listed in Local Civil Rule 16.3(c) and providing a brief statement of the case and the bases for all causes of action and defenses.

**SO ORDERED.**

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

18